In re J. F. Figueroa Maestre, Respondent.

No. 54.   Argued March 11, 1941.—Decided April 17, 1941.

*J. F. Figueroa Maestre, pro se.   R. A. Gómez, Prosecuting Attorney of the Supreme Court* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for The People.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

This is a proceeding for disbarment filed by the Prosecuting Attorney of this Court, in representation of the Attorney General of Puerto Rico, wherein J. F. Figueroa Maestre was charged with the commission of various criminal acts in relation to the exercise of his profession of attorney-notary.

The petition consists of twelve charges all of which refer not only to the fact that the respondent did not cancel the corresponding internal revenue stamps in many original deeds corresponding to the protocols of the years 1929 to 1939, both inclusive, but that said deeds have the appearance of having had the stamps stuck on them and later torn off, whereby The People of Puerto Rico has been defrauded in the amount of Two Hundred and Thirty Dollars and seventy-five cents ($230.75).

The respondent was duly notified and copy of the petition was served upon him and he then filed a pleading which he entitled "Motion to strike, demurrer and answer to the petition" wherein, after denying each and every one of the charges set forth in the petition he alleged, as a defense, the following:

"That the reason for the unglueing of the stamps from the deeds was a completely unexpected accident which took place on the 23rd and the dawn of the 24th of the month of November, 1939. Said accident consisted in the damaging of said protocols by the rainy and stormy weather to which they were exposed for a long time after the respondent had taken them to his country house in Utuado which is about two kilometers from the city with the idea in mind of depositing them the following day in the office of his colleague Suliveres Colón of Utuado. That he notified the District Court of Arecibo of said accident and that the court ordered an investigation which was carried on by the district attorney to whom he delivered all the volumes as well as a cardboard box which had the stamps which had fallen off and had been collected by the respondent.

"That these unstuck and collected stamps were again pasted in the protocols by order of the district court and its district attorney and that the respondent could not make up for those which were missing because his financial condition did not permit it. That the Bar Association of Puerto Rico granted him a loan of $150 to buy the stamps but that as that amount did not cover the sum needed, the respondent did not make the loan and notified the agent of the bonding company that he was going to surrender his notarial license and that later this Court awarded him sixty days to file a new bond or deliver the protocols to the keeper of protocols of Arecibo, he having delivered the same.

"That all the protocols had, before the 24th of November, 1939, all the corresponding stamps on all the deeds duly cancelled, and that at no time did the respondent remove or unpaste any stamps whatsoever nor touched in any manner the deeds contained in them."

A hearing was set for March 11, 1941, to hear and consider the charges. At the hearing, the complainant appeared represented by the Prosecuting Attorneys, Messrs. Gómez and Negrón and the respondent in his own right. The legal questions raised by the respondent were discussed and submitted by the parties and the Court dismissed the motion to strike and denied the demurrer. The case was then heard and the witnesses Attorney Ulpiano Crespo, Jr., Keeper of the Protocols of the District of Arecibo, Juan Ramírez Vega, Clerk of the District Court of Arecibo, and Attorney Julio Suárez Garriga, Ex-District Attorney of the same district, testified for the complainant. As documentary evidence the complainant presents the eleven notarial protocols of the respondent corresponding to the years 1929–1939; from a record of the District Court of Arecibo, the list of internal revenue stamps which appeared in a small carboard box taken to the court by the respondent, as well as the list of the stamps which were missing from the deeds executed by the respondent, which were admitted without objection.

As witnesses of the respondent, Attorneys Antonio E. Suliveres, Eduardo Marín Marién, Angel E. Franco and Gaspar Gerena Bras and Mr. Rafael Cortés testified. The respondent also testified and the parties stipulated that if the wife of the respondent had appeared she would have testified the same as he did.

The parties were granted terms to file briefs which they have done and the case is ready to be decided.

██ The evidence of the complainant, which in no way has been contradicted by respondent, shows that in the 345 deeds specified in the petition and belonging to the protocols of the years 1929–39 there are missing internal revenue

stamps for a total value of $230.75; that with the exception of five deeds, in all the rest in which said stamps are missing, there are clear signs that the same have been torn; that in many cases there appear signs, such as scratches and tears in the paper which shows that the stamps were torn off; that the protocols of the respondent are in this condition since they were delivered to the Keeper of Protocols for the District of Arecibo on May 30, 1940, and they were also in this state when, by order of the judge of said court, he delivered them on a previous date to the district attorney for said district.

The evidence of the respondent tended to show the facts which he alleged in the special defense, *supra*. He testified in short, that having decided to transfer his office from Utuado to Ponce and having to fix the steel file where he kept his notarial protocols, he took these on November 22, 1939, to the house in which he lived in the country, two kilometers away from the City of Utuado; that he placed the protocols in a shelf and during the night of the 23rd to the 24th of November it rained very much and a squall arose which tore off the eaves troughs of the house and the water then entered in a torrential manner into the house and damaged all the protocols from which the internal revenue stamps were detached; that he dried said stamps and protocols as well as he could and tried to paste some of the stamps on again; that he could not recover all the stamps because the water took them away and that the ones that he did collect, he put in a cardboard box; that he notified the Judge of the District Court of Arecibo of the accident and the latter ordered the district attorney to investigate the facts; that he testified in that investigation as to what had happened; that later, the judge ordered him to replace the stamps on the deeds but due to his financial condition he could not do so, although he tried to make a loan from the Bar Association.

The witness Attorney Antonio E. Suliveres, testified that the respondent had asked him permission to leave his notarial protocols in his office and that he acceded on condition that the respondent put them in a box; that two or three days later, the latter came to his office with some wet protocols and a box containing some internal revenue stamps and explained to him what had happened.

Attorney E. Marín Marién testified that on some day in 1939—he does not remember the month—when he was a municipal judge, the respondent informed him that as a result of torrential rains his protocols had been damaged and that he advised him to inform it to the district judge; that he remembers that there was a squall, a heavy rainstorm, two or three days previously.

The Attorneys Angel E. Franco and Gaspar Gerena Bras testified that a month before the hearing of this case they went with the respondent to his house on the road from Utuado to Arecibo; that they saw the eaves trough of the rear part of the roof and that there was a board missing from the wall.

The witness Rafael Cortés testified that the respondent talked to him on November 22, 1939, about repairing a steel file; that he saw him take the protocols out of it and he told him (Cortés) that he was taking them to his house in the country; that he went home and that as it rained very much and the river flooded, he could not come back until the second day; that when he came, the respondent told him that a rain pipe had broken down, water had entered his house and that the protocols had been damaged; and not to repair the file.

This is all the evidence of the case.

We have examined each and all of the notarial protocols of the respondent and it is true that from their condition and appearance they show that they did get wet for in some deeds, not all, the ink of the signatures of the parties and of

the notary has run. The bindings are in bad shape, and also the place where new stamps had been stuck can be noticed.

From the weighing of all the evidence presented, we are of the opinion that even accepting as true the fact that due to the water that entered respondent's house his protocols were wet, it is not possible to accept that this was the cause of the loss of all the internal revenue stamps which are missing from the deeds. As we have said before, there are clear indications in a great number of those deeds that the stamps were torn off, as it may be seen, among others, on the following deeds: Nos. 3, 10, 14 and 40 of the protocol of the year 1931; Nos. 9, 28 and 44 of the protocol of the year 1933; Nos. 6, 7, 9, 12, 13, 26, 27, 28, 29, 30, 31, 34, 35, 37 and 42 of the protocol of the year 1934.

It is also significant that there are protocols, such as that of the year 1931, in which from all the deeds, except No. 44, the internal revenue stamps are missing, and notwithstanding this, that protocol is not as affected by the water as others where there are less stamps missing.

■ Respondent had no right to take his notarial protocols out of his office in Utuado without previous judicial authorization, to take them to a dilapidated wooden house in the country, thereby exposing them to the rough weather which he alleges prevailed on the night of November 23, 1939. Section 33 of the Notarial Act, which regulates the practice of the notarial profession in Puerto Rico, approved on March 8, 1906 (Comp. Sts. 1911, Secs. 1979–2020), provides that "the protocol cannot be taken out of the building where it is kept, except by a judicial decree or by order of a competent authority". Respondent has in consequence violated said Section in relation to Section 3 which provides that protocols must be kept in steel or iron safes when the office is located in a wooden building.

We are not, however, considering the case at bar as an administrative one, for a violation of the provisions of the

494

Notarial Law, but we have wished to show that even the alleged defense of the respondent is vitiated with illegality and would have no justification whatsoever.

In view of the cases of *In re Rey González*, 56 P.R.R. 936; *In re Más*, 56 P.R.R. 940 and *In re Rivera*, 56 P.R.R. 940, wherein this Court held that the fact that a notary does not paste and cancel the internal revenue stamps on the public deeds which he executes constitutes sufficient cause to separate him from the profession of attorney-notary, and as the facts alleged by the Prosecuting Attorney have been proven, judgment is rendered granting the petition and the respondent, J. F. Figueroa Maestre is ordered to cease immediately and is hereby separated from the exercise of the profession of attorney-notary and that his name as such attorney-notary be stricken from the corresponding roll in the Clerk's Office of this Supreme Court and that this judgment be notified to the Insular Courts as well as to the Treasurer and the Executive Secretary of Puerto Rico.